■ JAMES LICHTENBERG, Appellant, v MICHAEL F. ZINN et al., Respondents. [687 NYS2d 817] —Crew III, J. Appeal from an order of the Supreme Court (Bradley, J.), entered February 20, 1998 in Ulster County, which granted defendants' motion for summary judgment dismissing the complaint.

Plaintiff commenced this shareholder derivative action in March 1993 on behalf of defendant Besicorp Group, Inc., a corporation engaged in the business of power production and heating technology, alleging a breach of fiduciary duty by the corporation's then board of directors, defendants Michael F. Zinn, Martin E. Enowitz and Steven I. Eisenberg. Although plaintiff questioned certain transactions proposed and entered into by Zinn, Enowitz and Eisenberg on behalf of the corporation and took issue with various financing decisions, the crux of the complaint centered upon plaintiff's allegation that Zinn, Enowitz and Eisenberg caused the corporation to grant them substantial stock options and warrants for little or no consideration, thereby wasting corporation assets and increasing their control of the company while diluting the power of the public shareholders.

Defendants answered and, in May 1994, the Besicorp board of directors was expanded to include three outside directors— Harold Harris, Gerald Habib and Richard Rosen, all of whom, in turn, were appointed to serve on a special litigation committee (hereinafter the SLC) created to determine whether the continuation of plaintiff's derivative action was in Besicorp's best interest. Following a lengthy investigation, the SLC issued a report finding that Zinn, Enowitz and Eisenberg had acted reasonably with respect to the subject transactions and that there had been no breach of fiduciary duty or waste of corporate assets. Accordingly, the SLC determined that continuation of plaintiff's derivative action was not in the corporation's best interest.

Following issuance of the SLC's report, defendants moved to dismiss pursuant to CPLR 3211 (a) (2), (3) and (7) or, in the alternative, for summary judgment in accordance with CPLR 3211 (c). Supreme Court held such motion in abeyance pending

the completion of discovery, which determination was affirmed by this Court on appeal (243 AD2d 1045). Ultimately, discovery was completed and, upon renewal, Supreme Court granted defendants' motion for summary judgment dismissing the complaint, prompting this appeal by plaintiff.

We affirm. Resolution of the instant appeal is governed by the Court of Appeals' decision in *Auerbach v Bennett* (47 NY2d 619), which establishes the framework for reviewing a special litigation committee's decision to terminate a shareholders' derivative action brought against corporate defendants. Preliminarily, the Court of Appeals observed, and we must bear in mind, that: "Derivative claims against corporate directors belong to the corporation itself. As with other questions of corporate policy and management, the decision whether and to what extent to explore and prosecute such claims lies within the judgment and control of the corporation's board of directors. Necessarily such decision must be predicated on the weighing and balancing of a variety of disparate considerations to reach a considered conclusion as to what course of action or inaction is best calculated to protect and advance the interests of the corporation. This is the essence of the responsibility and role of the board of directors, and courts may not intrude to interfere" (*id.*, at 631). Significantly, while the business judgment doctrine shields the substance of a SLC's decision from judicial inquiry, "the court may inquire as to the disinterested independence of the members of that committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee" (*id.*, at 623-624).

Applying these principles to the matter before us, it is apparent that Supreme Court did not err in granting defendants' motion for summary judgment dismissing the complaint. Turning first to the issue of "disinterested independence", the record establishes that neither Harris, Habib nor Rosen were named as defendants in the underlying action nor implicated in the alleged corporate wrongdoing and, further, that they were not members of Besicorp's board of directors at the time that the challenged transactions are alleged to have occurred. As to the personal relationships between Zinn and the SLC members, Rosen averred that he knew Zinn only casually before being appointed to Besicorp's board of directors in May 1994, the two having met because their children attended the same dance class, while Habib averred that his prior contact with Zinn was limited to an occasional tennis match. Although Harris, the record reflects, was one of Besicorp's original investors and previously had served on Besicorp's board of directors

from 1981 to 1985, he described his contact with Zinn between 1985 and 1994 as purely social and rather casual. Both Habib and Rosen had submitted consulting proposals to Besicorp in the past, but neither proposal came to fruition, and Harris' most recent business venture with Besicorp prior to rejoining the board of directors was in 1983. Such proof, coupled with Harris, Habib and Rosen's respective examination before trial testimony, was, in our view, sufficient to sustain defendants' initial burden on the motion for summary judgment.

In an effort to raise a question of fact as to Harris, Habib and Rosen's disinterested independence, plaintiff primarily asserts that Zinn "hand-picked" each member of the SLC and, further, so controlled and dominated the investigative process as to render Harris, Habib and Rosen mere puppets. A thorough reading of the entire record, however, fails to substantiate plaintiff's conclusory assertions in this regard. While it is true that Zinn personally approached Harris, Habib and Rosen about joining the board of directors, the record makes clear that each had substantial, relevant business experience and was not, as plaintiff asserts, merely one of Zinn's "cronies". Additionally, although Zinn admitted that he advised Harris, Habib and Rosen of the underlying lawsuit and offered his opinion as to its relative merit, there is nothing in the record to suggest that Harris, Habib or Rosen formed an opinion regarding such litigation prior to joining the board of directors or, more to the point, to substantiate plaintiff's assertion that each was chosen in an effort to preordain the outcome of the SLC's investigation. Indeed, Zinn testified that Harris, Habib and Rosen each indicated to him that if the allegations set forth in the underlying complaint were true, the lawsuit then indeed was a very serious matter.

As to Zinn's prior business dealings with the SLC members, given the timing of the business venture with Harris (1983) and the fact that the proposals made by Habib and Rosen ultimately were not accepted by Besicorp, we do not find that such prior relationships are sufficient to raise a question of fact as to the disinterested independence of the SLC members. We reach a similar conclusion regarding plaintiff's assertion that Zinn controlled the SLC's investigation. Harris, Habib and Rosen each acknowledged the confidential nature of the SLC's inquiry, and Zinn repeatedly testified that he was not privy to the specifics of the SLC's investigation or deliberations. In short, plaintiff simply failed to tender sufficient admissible proof to raise a question of fact as to the disinterested independence of the SLC members.

Turning to the adequacy of the SLC's investigative procedures and methodologies, we cannot say that such investigation was "so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham" (*Auerbach v Bennett*, 47 NY2d 619, 634, *supra*). As a starting point, the record makes clear that the board of directors granted the SLC unfettered and unlimited authority to conduct its investigation. To that end, the SLC retained experienced independent counsel and three unaffiliated experts to assist it in evaluating the specific allegations set forth in the complaint and, further, in reviewing the multitude of documents requested by the SLC. Additionally, the SLC interviewed Zinn and Eisenberg, reviewed the report of independent counsel's interview with Enowitz,* and extensively deliberated and considered the issues before it. In short, even a cursory review of the SLC's summary of findings and conclusions belies plaintiff's assertion that the SLC's investigation was perfunctory. Plaintiff's remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is affirmed, with costs.

---

* The interview with Enowitz apparently was conducted in this fashion due to his health.