[801 NE2d 395, 769 NYS2d 175]

John M. Bansbach, Appellant, v Michael F. Zinn et al.,
Respondents.

Argued September 16, 2003; decided October 30, 2003

## POINTS OF COUNSEL

*Harold B. Obstfeld, P.C.,* New York City (*Harold B. Obstfeld* of counsel), for appellant. I. The standard to be applied on a motion for summary judgment is stated in the following cases. (*Ugarriza v Schmieder,* 46 NY2d 471; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Zuckerman v City of New York,* 49 NY2d 557; *Kuehne & Nagel v Baiden,* 36 NY2d 539; *Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106; *Dampskibsselskabet Torm A/S v Thomas Paper Co.,* 26 AD2d 347; *Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276; *Afco Time Payment v Security Ins. Co. of Hartford,* 111 AD2d 634.) II. Plaintiff was excused from making a demand on the Besicorp board under Business Corporation Law § 626 (c). (*Barr v Wackman,* 36 NY2d 371; *Marx v Akers,* 88 NY2d 189; *Auerbach v Bennett,* 47 NY2d 619; *Biondi v Beekman Hill House Apt. Corp.,* 94 NY2d 659; *Diamond v Diamond,* 307 NY 263; *People v Uran Min. Corp.,* 13 AD2d 419; *Broome v Biondi,* 17 F Supp 2d 211; *Pilipiak v Keyes,* 286 AD2d 231, 97 NY2d 653; *In re Landmark Land Co. v Cone,* 76 F3d 553; *People v Knapp,* 206 NY 373.) III. The Appellate Division erred in granting summary judgment dismissing this action. (*Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65.) IV. The Appellate Division erred in failing to grant summary judgment to plaintiff. (*Marx v Akers,* 88 NY2d 189; *Buggie v Cutler,* 222 AD2d 640, 88 NY2d 807; *Bellino v Bellino Constr. Co.,* 75 AD2d 630; *Howard v Carr,* 222 AD2d 843.) V. At the least, plaintiff should have been allowed to replead. (*Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276; *Herrick v Second Cuthouse,* 64 NY2d 692; *Rossignol v Silvernail,* 185 AD2d 497; *Rainbow v Rosenberg,* 54 AD2d 1121; *Loudin v Mohawk Airlines,* 27 AD2d 517; *Hunsdorfer v West Side Structural Co.,* 284 App Div 1084; *Health-Loom Corp. v Soho Plaza Corp.,* 209 AD2d 197.)

*Robinson Brog Leinwand Greene Genovese & Gluck P.C.*, New York City (*David C. Burger* of counsel), for respondents. I. Bansbach is collaterally estopped not only on the issue of demand futility but also as to his challenge to the business judgment of the Besicorp directors. (*Alvarez v Prospect Hosp.*, 68 NY2d 320; *Amatulli v Delhi Constr. Corp.*, 77 NY2d 525; *Zuckerman v City of New York*, 49 NY2d 557; *Pinnacle Consultants v Leucadia Natl. Corp.*, 94 NY2d 426; *Auerbach v Bennett*, 47 NY2d 619; *40 W. 67th St. Corp. v Pullman*, 100 NY2d 147.) II. Bansbach's appeal seeks to have this Court rewrite the Business Corporation Law. (*Biondi v Beekman Hill House Apt. Corp.*, 94 NY2d 659; *Pilipiak v Keyes*, 286 AD2d 231; *Haenel v Epstein*, 88 AD2d 652; *Diamond v Diamond*, 307 NY 263; *People v Uran Min. Corp.*, 13 AD2d 419; *Schmidt v Magnetic Head Corp.*, 97 AD2d 151.) III. Bansbach's postdecision request for leave to replead was properly denied, since the proposed amendment failed to add anything of substance to the dismissed complaint. (*Alvord & Swift v Muller Constr. Co.*, 46 NY2d 276; *Herrick v Second Cuthouse*, 64 NY2d 692; *Rainbow v Rosenberg*, 54 AD2d 1121; *Loudin v Mohawk Airlines*, 27 AD2d 517; *Rossignol v Silvernail*, 185 AD2d 497; *Health-Loom Corp. v Soho Plaza Corp.*, 209 AD2d 197; *Hunsdorfer v West Side Structural Co.*, 284 App Div 1084.)

## OPINION OF THE COURT

Chief Judge KAYE.

This is a shareholder derivative action brought to recover damages allegedly suffered by Besicorp Group Inc., a public company, as a result of illegal conduct by defendant Michael Zinn—its founder, majority stockholder, board chairman, chief executive officer and president.[1] Because a derivative action is brought on the corporation's behalf, the law generally requires that demand first be made on the board of directors to pursue the claim. Here, plaintiff made no prelitigation demand on the Besicorp board, contending that demand was futile both because the board was dominated and controlled by Zinn and because a decision to indemnify Zinn was so egregious it could not have been the product of the directors' business judgment. At issue in this appeal is whether a prior litigation collaterally estops plaintiff from raising futility; if not, whether demand was in

---

1. Since this action was initiated, Besicorp's rights regarding this action were assigned to WOM, Inc., Besicorp's successor-in-interest, and WOM was substituted as the real party in interest.

fact futile; and whether plaintiff is entitled to summary judgment.

## I. Facts

In 1996, the federal government began a criminal investigation into defendant Zinn's involvement in the congressional campaign of Maurice Hinchey. The government issued subpoenas to Besicorp and others for documents and testimony before a grand jury concerning contributions by individuals associated with Besicorp in the 1992 and 1994 Hinchey campaigns and the use of Besicorp's assets in connection with those campaigns.

Defendant Zinn was finance chairman of the 1992 Hinchey campaign. In order to circumvent the Federal Election Campaign Act's prohibitions on corporate campaign contributions, Zinn allegedly arranged that he and certain Besicorp officers and employees would make contributions to the campaign and the company would reimburse them with raises or cash bonuses, deducted as business expenses by the corporation on its federal income tax returns; Zinn allegedly also solicited contributions from others and caused Besicorp to reimburse him by way of a bonus. On May 22, 1996, weeks after the subpoenas were issued, defendants Gerald A. Habib, Harold Harris and Richard E. Rosen convened a special board meeting and determined that the corporation would indemnify Zinn (and certain others) for legal fees and expenses in connection with the subpoenas, and that the corporation would be reimbursed if indemnification was unwarranted.[2] According to plaintiff, the corporation immediately began making substantial payments for legal fees and other charges associated with the government investigation.

One year later, on May 15, 1997, Zinn and Besicorp were indicted for their participation in the illegal scheme. The following month, they each agreed to plead guilty to aiding and abetting the submission of false statements to the Federal Election Commission; Besicorp agreed to plead guilty to the charge of making and signing a false corporate income tax return, and Zinn to aiding and abetting the preparation and presentation of a false federal income tax return. During the plea allocution on June 19, 1997, Zinn acknowledged in open court, under penalty

---

**2.** Habib, Harris and Rosen became directors in May 1994, after the campaign contributions were made. Harris resigned in November 1997 and defendant Michael J. Daley (chief financial officer) was elected to complete his term. The board during certain relevant times apparently consisted of three "outside" directors (Habib, Harris and Rosen), and two "inside" directors (Zinn and Daley).

of perjury, that he knowingly and willfully violated the law. In his words:

> "I made funds available to certain employees of my company through bonuses and advances so that their contributions to the 1992 congressional campaign of Maurice Hinch[e]y were in fact contributions of Besicorp. I knew the campaign would be reporting those contributions to the Federal Election Commission and I intended the campaign not identify the true source of the contribution. I was also aware and intended that those bonuses and advances be deducted in the ordinary course of events on Besicorp's tax return."

Plaintiff complains that the board took no action at that time to seek reimbursement, but instead during June and July 1997 authorized additional payments by the corporation for Zinn's legal fees and expenses.

On August 13, 1997, plaintiff commenced this derivative action alleging that defendants breached their fiduciary duties and wasted corporate assets by authorizing the use of Besicorp funds to pay legal costs in the federal investigation and by not seeking reimbursement from Zinn. On October 22, 1997, Zinn was sentenced to a six-month term of imprisonment with two years of supervised release, and fined $36,673; Besicorp was fined $36,400. As the sentencing court observed: "Mr. Zinn took advantage of the fact that he was the chief executive officer of a public corporation and he dipped into the corporate treasury to pay for his own political goals at the expense of the minority shareholders, many of whom did not share his political interest. . . . This is a case where in order to commit the election law violation, the person perpetrating the offense engaged in a fraud on his own shareholders and his own company and a breach of his duty of undivided loyalty and also in a tax fraud." After October 22, Besicorp made no further payments for Zinn's defense costs. Up to that time, Besicorp had allegedly advanced $273,010.99 for Zinn's defense, a fraction of the total legal costs the corporation incurred in connection with the illegal scheme.

Zinn resigned as an officer and director on November 11, 1997, and Daley succeeded him. On January 23, 1998—more than six months after Zinn pleaded guilty to knowingly violating the law and several months after plaintiff brought this lawsuit—the corporation's Legal Defense Management Committee, which consisted of Daley, Habib and Rosen, sought partial

reimbursement from Zinn of the expenditures the corporation incurred on his behalf ($186,000). The Committee (Daley abstaining) agreed to accept a $161,000 seven percent interest-bearing promissory note from Zinn (crediting him with a $25,000 bonus), payments to begin on June 1, 1998.

Defendants moved to dismiss plaintiff's action for failure to make a demand on the board of directors pursuant to section 626 (c) of the Business Corporation Law. In April 1998, Supreme Court granted defendants' motion and dismissed the action. With dismissal of the case in hand, on January 19, 1999 Besicorp's Legal Defense Management Committee—company counsel, officers and directors (including Habib, Rosen, Daley and Zinn)—met by telephone to continue their discussion regarding indemnification. By this time Zinn had been released from prison, and was reinstated as a Besicorp officer and director. The minutes recite that the Committee reviewed a report of independent counsel retained to advise whether the corporation could indemnify Zinn for his costs and expenses, and whether the corporation was obligated to seek reimbursement from him. That report is not part of the record before us. The minutes also reflect that Zinn attended virtually the entire meeting.

The Committee found that Zinn's conduct relating to the 1992 Hinchey campaign was "undertaken in good faith," that he "reasonably believed at the time to be in the best[ ] interests of the Company" and that he "had no reasonable cause to believe that his conduct was unlawful." The Committee unanimously voted that the corporation indemnify Zinn for all legal costs and expenses related to his defense, subsequent guilty plea, sentencing and incarceration, and also indemnify him for any covered costs he previously paid. As revealed in Besicorp's March 2, 1999 proxy statement, this action authorized payment of Zinn's $36,673 fine, acknowledged that he had no further obligation on the $141,000 balance remaining on the promissory note, and authorized repayment of approximately $39,180 of legal fees and expenses incurred by third parties that Zinn had paid. The minutes of the board meeting do not reflect what consideration, if any, the board gave to Zinn's sworn admissions to having knowingly violated the law, thus exposing the corporation to criminal penalties and other harm.

Shortly after the Committee's action, the Appellate Division reversed Supreme Court's dismissal of plaintiff's complaint, concluding that for purposes of a CPLR 3211 (a) (7) motion, the allegations of business dealings among the board members indicating a lack of independence were sufficient to excuse

demand as futile. The Court rejected plaintiff's proffered alternative ground—that the conduct was so egregious that it could not have been the product of sound business judgment (258 AD2d 710 [3d Dept 1999]).

In April 2000, after obtaining dismissal of another derivative suit brought against the corporation, defendants moved for summary judgment dismissing plaintiff's derivative suit. Defendants argued that, based on *Lichtenberg v Zinn* (260 AD2d 741 [3d Dept 1999], *lv denied* 94 NY2d 754 [1999]—decided by the Appellate Division just after its reinstatement of plaintiff's complaint—plaintiff was collaterally estopped from claiming that demand on the corporation was excused by the directors' personal and business dealings. Plaintiff opposed defendants' motion and cross-moved for summary judgment. Supreme Court denied defendants summary judgment on collateral estoppel grounds, finding the *Lichtenberg* challenge different from the present complaint, and granted plaintiff summary judgment with respect to Zinn's liability based on his guilty plea admissions. The Appellate Division reversed and dismissed the action, concluding that "the precise issue" being litigated here was litigated in *Lichtenberg*, and that plaintiff could not rely on facts occurring after commencement of his action to excuse demand on the alternative ground (294 AD2d 762, 763 [3d Dept 2002]). In this posture the case now reaches us.

## II. The Requirement of Demand

Central to this appeal is the requirement of demand, which is the starting point for our analysis.

Derivative actions brought by minority shareholders vindicate the corporation's rights (*Marx v Akers*, 88 NY2d 189, 193 [1996]). On the one hand, derivative actions are not favored in the law because they ask courts to second-guess the business judgment of the individuals charged with managing the company. On the other hand, derivative actions serve the important purpose of protecting corporations and minority shareholders against officers and directors who, in discharging their official responsibilities, place other interests ahead of those of the corporation.

A balance of these considerations is maintained by the requirement that a plaintiff shareholder set forth in the complaint—with particularity—an attempt to "secure the initiation of such action by the board or the reasons for not making such effort" (Business Corporation Law § 626 [c]). The demand requirement rests on "basic principles of corporate control—

that the management of the corporation is entrusted to its board of directors, who have primary responsibility for acting in the name of the corporation and who are often in a position to correct alleged abuses without resort to the courts" (*Barr v Wackman*, 36 NY2d 371, 378 [1975] [citation omitted]; *see also Auerbach v Bennett*, 47 NY2d 619, 630-631 [1979]). The demand requirement thus relieves courts of unduly intruding into matters of corporate governance by first allowing the directors themselves to address the alleged abuses. The requirement also provides boards with reasonable protection from harassment on matters clearly within their discretion, and it discourages "strike suits" commenced by shareholders for personal rather than corporate benefit (*Marx v Akers*, 88 NY2d at 194).

Demand is futile, and excused, when the directors are incapable of making an impartial decision as to whether to bring suit. That occurs in three circumstances:

> "(1) Demand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transaction. Director interest may either be self-interest in the transaction at issue, or a loss of independence because a director with no direct interest in a transaction is 'controlled' by a self-interested director. (2) Demand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances. The 'long-standing rule' is that a director 'does not exempt himself from liability by failing to do more than passively rubber-stamp the decisions of the active managers'. (3) Demand is excused because of futility when a complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors" (*Marx v Akers*, 88 NY2d at 200-201 [citations omitted]).

If demand is excused—as plaintiff alleges it should be, on the first and third grounds—it then becomes the court's role to chart the course for the corporation which the directors should have selected (*id.* at 194).

### III. Collateral Estoppel

Defendants argue that plaintiff is collaterally estopped from asserting that demand is futile because the issue has already been conclusively litigated in *Lichtenberg*. If *Lichtenberg* is determinative, this suit ends.

Collateral estoppel rests on considerations of fairness and efficiency. Where a pending issue was raised, necessarily decided and material in a prior action, and where the party to be estopped had a full and fair opportunity to litigate the issue in the earlier action, fairness and efficiency dictate that the party should not be permitted to try the issue again (*Pinnacle Consultants v Leucadia Natl. Corp.*, 94 NY2d 426, 431-432 [2000]). Collateral estoppel is inapplicable here.

*Lichtenberg v Zinn* was a derivative action brought in 1993 on behalf of Besicorp against its board members, including Zinn, charging that they caused the corporation to grant board members substantial stock options and warrants for little or no consideration, thereby wasting Besicorp's assets, increasing their control of the company and diminishing the minority interest. Just after *Lichtenberg* was filed, in May 1994 Besicorp constituted a Special Litigation Committee made up of new board members Harris, Habib and Rosen, to determine if continuation of the action was in the best interest of the corporation. After a lengthy, comprehensive investigation—including the retention of independent legal counsel and three experts, document inspection and interviews summarized in a 24-page report to the board—the Committee concluded that defendants had acted reasonably, that there was no breach of fiduciary duty or waste of corporate assets and that continuation of the action was not in the best interest of the corporation. Harris, Habib and Rosen also separately submitted detailed affidavits in *Lichtenberg*, attesting to their independence from Zinn, their comprehensive investigation and their lengthy deliberative process.

Supreme Court dismissed *Lichtenberg*, and the Appellate Division affirmed, concluding that the Committee's determination was the result of sound business judgment, supported by a thorough investigation conducted by the defendant directors as well as independent counsel. The Court rejected the argument that the directors were "interested" by reason of prior personal relationships and prior business dealings with Zinn or Besicorp: "the record establishe[d] that neither Harris, Habib nor Rosen were named as defendants in the underlying action nor implicated in the alleged corporate wrongdoing and, further,

that they were not members of Besicorp's board of directors at the time that the challenged transactions [were] alleged to have occurred" (*id.* at 742). In the Appellate Division's view, each director demonstrated substantial relevant business experience and was not merely one of Zinn's "cronies" (*id.* at 743).

Defendants correctly observe that, like plaintiff in the present case, Lichtenberg challenged the "interest" of Harris, Habib and Rosen on grounds of personal and business connections to Zinn. That the Appellate Division in *Lichtenberg* concluded these defendants were not subject to Zinn's domination and control with respect to the stock options and warrants, however, does not for all time and in all circumstances insulate their conduct from similar claims. Significantly, in the present action Harris, Habib and Rosen were personally implicated in the alleged wrongdoing; they were board members at the time of the events in issue and they are named defendants in the suit, themselves subject to liability. Moreover, in *Lichtenberg* both Supreme Court and the Appellate Division had before them affidavits and other materials evidencing the directors' independence. Here, by contrast, the record before us contains no evidence of defendants' motivation, investigation or deliberative process with respect to indemnification and reimbursement, and no evidence of independent counsel's efforts apart from mention of a report. Defendants merely rely on the proof they put before the court in *Lichtenberg*, which does nothing to substantiate their claims that in this case they acted with integrity and independence, in the interest of the corporation rather than the interest of Zinn.

In short, there being no identity of issue, *Lichtenberg* does not estop plaintiff from litigating the futility of demand.

### IV. Futility of Demand

As noted earlier, demand is futile when the board itself has an interest in the matter at issue and therefore cannot objectively determine if it should continue the suit (*see generally* Dennis J. Block et al., The Business Judgment Rule: Fiduciary Duties of Corporate Directors, at 1467-1468 [5th ed 1998]). As we recognized in *Marx v Akers*, director "interest" for this purpose may be either a director's self-interest in the matter or a loss of independence owing to domination and control by a self-interested director. A charge of interest must be made with particularity. Simply naming a majority of the board as defendants with conclusory allegations of wrongdoing or control is insufficient to circumvent the requirement of demand (*Barr v Wackman*, 36 NY2d 371, 379 [1975]).

In *Barr,* interest was found and demand excused where the board approved an offer less favorable to the company but more beneficial to board members personally (36 NY2d at 380). Similarly, in *Marx* self-interest was shown by allegations that the outside directors comprised a majority of the board and therefore received a personal benefit in fixing their own excessive compensation (88 NY2d at 202).

Here, the claim is different. Plaintiff alleges that the board was dominated and controlled by Zinn, who by reason of his position and associations with defendants caused them to place his interests above those of the corporation. That interest is exemplified by the board's immediate action covering Zinn's fees upon issuance of the subpoenas, yet delaying reimbursement—indeed, continuing to advance defense costs—after Zinn in open court admitted having implicated the corporation in his criminal conduct. Evidence of postlitigation events confirms plaintiff's assertions that demand on these directors was futile. When certain of the defendants ultimately decided to seek reimbursement from Zinn months later, they sought only partial repayment in the form of a promissory note. And after Supreme Court's dismissal of plaintiff's action (but before reinstatement by the Appellate Division), they voted to indemnify Zinn for all legal costs and expenses associated with his defense, plea bargain, sentencing and incarceration—including costs previously paid and the fine assessed against him.

We agree with plaintiff that it was futile to ask this board to initiate action to recover the losses allegedly suffered by the corporation.[3]

## V. Summary Judgment

Plaintiff contends that he is entitled to summary judgment against all defendants because, in contravention of New York's indemnification laws, the board indemnified Zinn even after he pleaded guilty to knowing and willful criminal conduct implicating the corporation. We agree with Supreme Court that the motion should have been granted as to the liability of Zinn and otherwise denied.

New York's Business Corporation Law sets forth a "good faith" standard for indemnification. A corporation may indemnify an officer or director "if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in

---

**3.** Because demand was excused on this ground, we need not address the egregiousness issue.

. . . the best interests of the corporation and, in criminal actions or proceedings, in addition, had no reasonable cause to believe that his conduct was unlawful" (Business Corporation Law § 722 [a]). Indemnification is prohibited, however, if a judgment or other final adjudication adverse to the director establishes that his acts were committed "in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or that he personally gained in fact a financial profit or other advantage to which he was not legally entitled" (Business Corporation Law § 721). Termination of a legal proceeding by "judgment, settlement, conviction or upon a plea of nolo contendere, or its equivalent, shall not in itself create a presumption that any such director or officer did not act, in good faith, for a purpose which he reasonably believed to be in . . . the best interests of the corporation or that he had reasonable cause to believe that his conduct was unlawful" (Business Corporation Law § 722 [b]).

Here, Zinn's illegal scheme resulted in a five-count felony indictment against him and the company. In his plea allocution, Zinn admitted under oath in open court that he made company funds available to employees so that they might contribute to a congressional campaign in violation of the Federal Election Campaign Act, and that he was aware and intended that bonuses and advances to reimburse them would be deducted in the ordinary course of events on Besicorp's tax returns. When asked by the court if his acts were knowing and willful, Zinn answered, "Yes, Your Honor." In response to the question, "Did you know it was a violation of law to do them?" Zinn stated, "I believe I did, Your Honor." We cannot agree with defendants that the conduct at issue—punished with a sentence of fines and imprisonment—was little more than a "technical violation of an obscure *malum prohibitum* statute." Zinn's sworn admissions leave no room for finding that he was entitled to indemnification by Besicorp because he acted in good faith, for a purpose he reasonably believed to be in the best interest of the corporation and had no reasonable cause to believe that his conduct was unlawful (*see Biondi v Beekman Hill House Apt. Corp.*, 94 NY2d 659 [2000]; *see also Pilipiak v Keyes*, 286 AD2d 231 [1st Dept 2001]).

As to the remaining defendants we deny plaintiff's motion for summary judgment. Factual issues remain as to the motivation for their actions, particularly in light of their failure to do more than note the existence of a report of independent legal counsel, upon which they place heavy reliance (*see* Business Corporation Law § 723 [b] [2] [A]).

Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the order of Supreme Court, Ulster County, and, as modified, affirmed.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order modified, etc.