█ CHARLES H. SANFORD III, et al., as Members of New York Zeta of Phi Delta Theta Corporation, Appellants, v COLGATE UNIVERSITY, Respondent. [828 NYS2d 633]—

Peters, J. Appeal from an order of the Supreme Court (O'Brien III, J.), entered December 2, 2005 in Madison County, which, inter alia, granted defendant's motion to dismiss the amended complaint.

This derivative action was brought pursuant to N-PCL 623 by dissident members of the New York Zeta of Phi Delta Theta Corporation (hereinafter PDT) in protest of the sale of the PDT fraternity house to defendant by the seven member PDT board. The underlying facts are that defendant promulgated a new residential plan in July 2003 which, among other things, required that all students live in university housing beginning with the fall 2005 semester. As part of that plan, defendant made offers to purchase independently-owned fraternity and sorority houses that were operating at defendant. In February 2004, defendant submitted its first offer to acquire the PDT house for $463,500, which was rejected by the PDT board. Plaintiffs allege that in June 2004, officials of defendant issued letters stating that any fraternity or sorority not selling its house to defendant would lose official recognition and that any students associated with an unofficial fraternity would face sanctions, including possible suspension and expulsion.[1] Considering several alternatives and after 16 months of negotiations, the PDT board agreed to sell the house to defendant for $670,000 conditioned upon several other significant concessions by defendant. Although the PDT board sent a letter to its members recommending a vote in favor of the sale at its March 2005 meeting, it failed to achieve a

---

1. Further memoranda and letters by officials of defendant clarified that those fraternities or sororities who opted not to sell their house to defendant- would not be allowed to house or enroll defendant's students as its members; defendant ultimately retracted the planned imposition of sanctions against students in April 2005.

quorum. At the rescheduled April 2005 meeting, two thirds of the PDT voting members approved the sale.

In May 2005, prior to the closing, plaintiffs sent a letter to the PDT board, along with a proposed complaint, demanding the initiation of legal proceedings against defendant. The PDT board responded by hiring outside counsel and, pursuant to a further investigation and counsel's advice, voted unanimously to reject plaintiffs' demand. Thereafter, the PDT board consummated the sale to defendant. In July 2005, plaintiffs commenced this action seeking a recision. Defendant's subsequent motion to dismiss the complaint was granted after a hearing. Plaintiffs appeal.

On a motion to dismiss, the pleadings must be afforded a liberal construction, accepting the facts as true with every favorable inference to the plaintiff to determine whether the evidence fits within any cognizable legal theory (*see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303 [2001]; *Griffin v Anslow*, 17 AD3d 889, 891 [2005]). If the evidence establishes a defense as a matter of law, dismissal is appropriate (*see Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, supra* at 303; *Griffin v Anslow, supra* at 891). In this type of action, the complaint must set forth, with particularity, the efforts made by plaintiffs to secure the initiation of the derivative action by the PDT board (*see* N-PCL 623 [c]). Once the demand is made, the decisions of the PDT board about whether or not to commence the action will be governed by the business judgment rule (*see Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327, 360 [2005]; *see also Auerbach v Bennett*, 47 NY2d 619, 629 [1979]; *Lichtenberg v Zinn*, 260 AD2d 741, 742 [1999], *lv denied* 94 NY2d 754 [1999]). Under that precept, absent evidence of bad faith or fraud, a court will limit its inquiry "to the disinterested independence of the members of that committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee" (*Auerbach v Bennett, supra* at 623-624; *see Lichtenberg v Zinn, supra* at 742).

On the issue of disinterested independence, plaintiffs claim that board member Bruce Clayton played a "dual role" in this transaction since he was also working with defendant as president of the Alumni InterFraternity/Sorority Council (hereinafter AIFSC[2] ) and, in that capacity, had agreed to the sale of the PDT house as early as November 2003. With this accusation

2. This AIFSC is a consortium of board members from the various alumni-owned fraternity and sorority chapter houses.

solely supported by a letter to Clayton from defendant's vice-president, expressing pleasure to have the support of the AIFSC in the implementation of the new housing plan, we find it insufficient to allege any wrongdoing when, in February 2004, the PDT board rejected defendant's original offer and continued its negotiations. Plaintiffs' allegations against board member Steven Zatta are equally unsupported. Alleging that Zatta did not permit a revote regarding the sale and had misrepresented defendant's intentions in its motivation to implement the new policy, plaintiffs again fail to allege any wrongdoing by Zatta or any other member of the PDT board. Moreover, even if there were merit to plaintiffs' assertions as to the independence of Clayton and Zatta, an independent majority of the board voted to support the sale and refuse the demand to sue (*see Auerbach v Bennett, supra* at 632; *Tomczak v Trepel*, 283 AD2d 229, 230 [2001], *lv dismissed and denied* 96 NY2d 930 [2001]).

As to the sufficiency of the investigative procedures chosen and pursued, no viable allegation establishes that the PDT board failed to perform a reasonably complete, good faith inquiry into either the sale of the house or plaintiffs' demand to bring suit. Rather, evidence revealed that during the course of negotiations, the PDT board held a series of meetings with defendant to consider alternatives, which included the rejection of defendant's offer. After obtaining an independent appraisal and retaining counsel, the PDT board concluded its 16 months of negotiations after exacting significant concessions. When plaintiffs demanded that the PDT board bring suit, outside counsel was retained to evaluate that course. For all of these reasons, we agree with Supreme Court that plaintiffs failed to establish a prima facie case of bad faith or fraud and, therefore, the action taken by the PDT board is protected by the business judgment rule (*see Auerbach v Bennett, supra* at 634). As to the denial of plaintiffs' request to amend their complaint, we find no abuse of discretion since the proposed amendment did not rectify the inadequacies noted.

Cardona, P.J., Carpinello, Rose and Kane, JJ., concur. Ordered that the order is affirmed, with costs.