*639 In an action, inter alia, to recover damages for professional negligence, the defendant Citrin Cooperman & Co., LLP, appeals, as limited by its brief and a letter dated June 5, 2013, from so much of an order of the Supreme Court, Nassau County (Bucaria, J), entered March 16, 2010, as denied its motion pursuant to CPLR 3211 (a) to dismiss the amended complaint insofar as asserted against it, and the plaintiff cross-appeals, as limited by its brief and a letter dated June 5, 2013, from so much of the same order as, upon denying the motion of the defendant Citrin Cooperman & Co., LLP pursuant to CPLR 3211 (a) to dismiss the amended complaint insofar as asserted against it, limited the damages recoverable against Citrin Cooperman & Co., LLP
Ordered that the order is affirmed insofar as appealed from; and it is further,
Ordered that the order is reversed insofar as cross-appealed from, on the law; and it is further,
Ordered that one bill of costs is awarded to the plaintiff.
This action involves losses sustained by an investment fund which invested with the firm of Bernard Madoff, who was convicted of crimes related to his operation of a Ponzi scheme. The plaintiff is a member of Andover Associates, LLC I (hereinafter Andover), and is suing derivatively on behalf of Andover. He originally asserted claims against, among others, Andover Associates Management Corp. (hereinafter AAMC), the managing member of Andover, AAMC’s principals, the investment consultant Ivy Asset Management, LLC (hereinafter Ivy), and Citrin Cooperman & Co., LLP (hereinafter Citrin Cooperman), an independent auditor.
According to the amended complaint, Ivy introduced and recommended Madoff to AAMC and its principals to be an investment manager for a prospective fund which would become Andover. Andover was originally a limited partnership named Andover Associates, LP I. The partnership agreement provided that AAMC was the general partner of Andover, with the full and exclusive right to manage and control Andover, entitling AAMC to a general partner fee. Andover offered limited partnership interests to qualified investors through a confidential offering memorandum dated August 9, 2004. The plaintiff became a limited partner of Andover in January 2006.
In 2008, Andover was reorganized as a limited liability *640 company, and an operating agreement replaced the partnership agreement. AAMC was made managing member, with full control over the operation of Andover, entitling AAMC to a managing member fee. The plaintiff was converted into a non-managing member of Andover, and membership interests were offered through a new confidential offering memorandum. According to the amended complaint, when Madoff s Ponzi scheme was discovered in December 2008, approximately 25% of Andover’s assets, valued at approximately $14 million, was invested with Madoff.
The amended complaint asserts a cause of action against Citrin Cooperman to recover damages for professional negligence in connection with the auditing services it provided to Andover. Citrin Cooperman moved pursuant to CPLR 3211 (a) to dismiss the amended complaint insofar as asserted against it. The Supreme Court denied the motion, although, upon doing so, it concluded that the plaintiff may not recover the amount of profit which Madoff fraudulently claimed that Andover earned and limited Andover’s recoverable damages to the amount of its un-recouped investment. Citrin Cooperman appeals from so much of the order as denied its motion, and the plaintiff cross-appeals from so much of the order as limited the damages recoverable against Citrin Cooperman.
The Supreme Court properly denied that branch of Citrin Cooperman’s motion which was pursuant to CPLR 3211 (a) (3) to dismiss the amended complaint insofar as asserted against it for lack of standing. The plaintiff sufficiently pleaded with particularity that demand upon AAMC to assert the claim against Citrin Cooperman on Andover’s behalf would have been futile (see Bansbach v Zinn, 1 NY3d 1, 9 [2003]; Marx v Akers, 88 NY2d 189, 200-201 [1996]; see generally Tzolis v Wolff, 10 NY3d 100 [2008]). The amended complaint alleges that AAMC had a direct financial interest in Citrin Cooperman’s issuance of clean audit opinions in the form of continued higher fees for maintaining the investment with Madoff, as well as inflated fees based on a percentage of Andover’s fictitious profits. Further, it alleges that AAMC’s principals did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances (see Matter of Comverse Tech., Inc. Derivative Litig., 56 AD3d 49, 55 [2008]).
The Supreme Court also properly denied that branch of Citrin Cooperman’s motion which was pursuant to CPLR 3211 (a) (7) to dismiss the amended complaint insofar as asserted against it. On a motion to dismiss pursuant to CPLR 3211 (a) (7), the complaint is to be afforded a liberal construction (see CPLR *641 3026). The facts alleged are presumed to be true, the plaintiff is afforded the benefit of every favorable inference, and the court is to determine only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87 [1994]; Thomas v LaSalle Bank N.A., 79 AD3d 1015, 1017 [2010]). Here, the plaintiff sufficiently pleaded that Citrin Cooperman’s alleged negligence proximately caused Andover to sustain damages. The question of whether responsibility for Andover’s losses may be reasonably attributed to Citrin Cooperman’s alleged negligence in light of Madoff’s criminal scheme is an issue for determination by the fact-finder (see Bell v Board of Educ. of City of N.Y., 90 NY2d 944, 947 [1997]; Kush v City of Buffalo, 59 NY2d 26, 33 [1983]; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]). Likewise, whether Andover could have obtained a return of its investment had Citrin Cooperman discovered the fraud may not be determined on this motion to dismiss and, in any event, the plaintiff pleaded further damages related to fees paid on the fictitiously inflated investment balance.
Contrary to the plaintiff’s contention, Citrin Cooperman raised the issue of the measure of Andover’s damages before the Supreme Court. Further, damages may properly be limited on a motion to dismiss (see Howard S. v Lillian S., 14 NY3d 431, 437 [2010]; Sand v Chapin, 238 AD2d 862, 863 [1997]; Swersky v Dreyer & Traub, 219 AD2d 321, 328 [1996]; Crossland Sav. v Foxwood & S. Co., 202 AD2d 544, 546 [1994]). When a party seeks damages for lost profits, the profits may not be imaginary (see Kenford Co. v County of Erie, 67 NY2d 257, 261 [1986]; O’Neill v Warburg, Pincus & Co., 39 AD3d 281, 283 [2007]). It is undisputed that the profits reported by Madoff were completely imaginary. The fictitious profits never existed and, thus, Andover did not suffer any loss with respect to the fictitious sum (see Jacobson Family Invs., Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 102 AD3d 223, 233-234 [2012]). However, the Supreme Court did not merely determine that the plaintiff may not recover the amount of the fictitious profits, but specifically limited damages to the amount of Andover’s un-recouped investment. The plaintiff pleaded facts based on which other damages related to the payment of fees may be recoverable and thus, it was error for the Supreme Court to limit damages to the amount of Andover’s un-recouped investment. Rivera, J.P., Leventhal, Chambers and Lott, JJ., concur.