Vogel v A Life Made Simple (2024 NY Slip Op 51442(U))

[*1]

Vogel v A Life Made Simple

2024 NY Slip Op 51442(U)

Decided on October 22, 2024

Supreme Court, Warren County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 22, 2024
Supreme Court, Warren County

Frederick W. Vogel, FREDERICK M. VOGEL, MICHAEL VOGEL and SCOTT VOGEL, Plaintiffs,

against
A Life Made Simple and KATELYN MOSKOS, Defendants.

Index No. EF2023-71038 

Bartlett, Pontiff Stewart & Rhodes, P.C., Glens Falls (Jeffrey B. Shapiro, of counsel), for plaintiffs.
Timothy R. Shevy, Castleton, for defendants.

Robert J. Muller, J.

The plaintiffs, Frederick W. Vogel, Federick M. Vogel, Michael Vogel and Scott Vogel (collectively, the "plaintiffs"), commenced this action by filing a summons and complaint, dated February 8, 2023, in the Office of the Warren County Clerk, via the New York State Courts Electronic Filing system (NYSCEF), on the 9th day of February, 2023 (NYSCEF Doc. No. 2).
The plaintiffs assert three separate and distinct causes of action, the gravamen of each being that the defendants, A Life Made Simple and Katelyn Moskos, are indebted to them in the sum of $379,084.00, with interest, in connection with a joint business venture as between the plaintiffs, as members of Northern Hospitality Management, LLC (hereinafter, "Northern Hospitality Management") and defendant Moskos.
By Notice of Motion, dated March 6, 2023 (NYSCEF Doc. No. 4), defendants moved, pre-answer, for an Order and Judgment of this Court:
A. dismissing the within complaint pursuant to CPLR 3211 on grounds that the causes of action alleged therein are barred by operation of the doctrine of res judicata;
B. awarding the defendant, Katelyn Moskos, actual expenses and attorney's fees reasonably incurred pursuant to Section 130-1.1 (a) of the Rules of the Chief Administrative Judge, on grounds that the plaintiffs are engaged in frivolous conduct as such term is defined in Subsection (c) thereof;
C. sanctioning financially the firm of Bartlett, Pontiff, Stewart and Rhodes, P.C. (the "Firm") pursuant to Section 130-1.1 (b) of the Rules of the Chief Administrative Judge, on grounds that the firm is facilitating frivolous conduct as such term is defined in Subsection (c) thereof;
D. enjoining the plaintiffs, in their individual capacity or as members of Northern Hospitality Management from commencing any future legal action against the defendant, Katelyn Moskos, or Northern Living, LLC, without prior authorization of this Court; together with;
E. costs of this action; and
F. for such other and further relief as the Court deems just and proper.
In support of their motion, defendants submit the affirmation of counsel, with exhibits, affirmed the 6th day of March, 2023 (NYSCEF Doc. Nos. 5 through 30). In opposition thereto, the plaintiffs submit an opposing affirmation with exhibits, affirmed the 29th day of March, 2023 (NYSCEF Doc. Nos. 34, 36) and a Memorandum ofLaw in Opposition (NYSCEF Doc. No. 35). In response thereto, defendants submitted a reply affirmed the Yd day of April, 2023 (NYSCEF Doc. No. 37). At the direction of the Court, the parties submitted additional support for their positions including the Supplemental Affirmation of Attorney Shevy, affirmed the 25 th day of January 2024 (NYSCEF Doc. No. 45) and the Affirmation of Attorney Shapiro, affirmed the I st day of April, 2024 (NYSCEF Doc. No. 47);
Upon reading and considering the complaint, the affirmations of counsel, plaintiffs' Memorandum of Law, with careful review of all exhibits and due deliberation having been had thereon, the Court finds as follows:
On June 29, 2017, non-party to this action, Northern Hospitality Management, doing business as A Life Made Simple, commenced an action against defendants, and non-parties A Life Made Simple, LLC and Northern Living, LLC, by filing a complaint in the Office of the Warren County Clerk (the "2017 Complaint") (NYSCEF Doc. No. 11). That 2017 Complaint alleged violations of the Lanham Act (15 U.S.C. S1051 et seq. hereinafter "Lanham Act"), tortious interference with contract, conversion and unjust enrichment.
On September 28, 2021, a jury trial of all issues commenced before this Court on the 2017 Complaint. Prior to the verdict the plaintiffs withdrew their Lanham Act claims. On October 7, 2021 , the jury returned its verdict, unanimously in favor of defendant Moskos and her company, Northern Living, LLC. (See Verdict Sheet, NYSCEF Doc. No. 16).
On February 9, 2022, Northern Hospitality Management, again doing business as A Life Made Simple, commenced a second action against defendant Moskos asserting causes of action sounding in judicial dissolution (Partnership Law $3); contribution upon dissolution (Partnership Law *65) and satisfaction of partnership liabilities (Partnership Law *71) (the "2022 Complaint") (NYSCEF Doc. No. 19). By Notice of Motion, dated March 3, 2022, defendant Moskos moved, pre-answer, for dismissal of the 2022 Complaint on grounds that the causes of action alleged therein are barred by operation of the doctrine of res judicata (NYSCEF Doc. No. 7). During the pendency of the motion, and without responding thereto, Northern Hospitality Management voluntarily withdrew the 2022 Complaint (NYSCEF Doc. No. 8).
The present action represents the third lawsuit filed by Northern Hospitality Management and/or its membership against defendant Moskos seeking an award of damages in connection with the operation of a venture known to the parties and this Court as "A Life Made Simple."
In the 2017 action, the facts of which this Court is well acquainted, Northern Hospitality Management alleged that defendant Moskos was a mere employee of Northern Hospitality Management, tasked with managing a "segment" of its business dedicated to the marketing and management of short-term vacation rental properties called "A Life Made Simple". It was further alleged that defendant Moskos pilfered Northern Hospitality Management of its property, clients and contracts, ultimately destroying the A Life Made Simple "segment" of its business and unjustly enriching herself, and her new company, Northern Living, LLC, in the process.
Defendant Moskos asserted that, as a partner in the A Life Made Simple venture, she had legal standing to dissolve the partnership unilaterally, that she converted no assets or property, and that neither she nor her new company had been unjustly enriched.
At trial on the 2017 Complaint, Northern Hospitality Management offered the testimony [*2]of (plaintiff herein) Frederick Vogel, Jr., a member of Northern Hospitality Management and Stephen Ferraro, CPA, of Ferraro, Amodio & Zarecki, CPAs, who was accepted by this Court as an expert witness in the field of forensic accounting. Defendants Moskos and Northern Living, LLC offered the testimony of John Moskos and defendant Moskos, the two constituting the entirety of the membership of Northern Living, LLC. A complete and duly certified copy of the trial transcript is uploaded to NYSCEF as Doc. No. 43.
Ferraro testified that, based upon his calculations, A Life Made Simple sustained losses in the amount of $379,000.00 during its existence (NYSCEF Doc. No. 30). Fred Vogel testified that Northern Hospitality has four "partners": his father, Frederick Vogel, Sr.; his brother, Michael Vogel, his brother Scott Vogel; and himself (NYSCEF Doc. No. 9).
In this action the named plaintiffs seek an award of damages of $379,084.00, with interest, on the theory that the four plaintiffs, in their collective individual capacities, extended credit in said sum to defendant Moskos in connection with the A Life Made Simple venture (NYSCEF Doc. No. 2). Plaintiffs Frederick Vogel, Sr., Frederick Vogel, Jr., Michael Vogel and Scott Vogel were not parties to the 2017 action in their individual capacities.
In that trial Northern Hospitality Management made no allegations concerning the extension of credit to defendants in its 2017 Complaint. They certainly could have.
Defendant Moskos seeks dismissal of the within Complaint on grounds that the causes of action asserted therein are barred by operation of the doctrine of res judicata. Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated, but also to claims that could have been raised in the prior action. The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again. (In re Hunter, 4 NY3d 260, 269 [2005] citing O'Connell v Corcoran, 1 NY3d 179, 184-185 [2003]; and Gramatan Home Invs. corp. v Lopez, 46 NY2d 481, 485 [1979]).
"Resjudicata is designed to provide finality in the resolution of disputes, recognizing that considerations ofjudicial economy, as well as fairness to the parties mandate, at some point, an end to litigation." (Hunter 4 NY3d at 269-270 quoting Reilly v Reid, 45 NY2d 24, 29-30 [1978]). "Under New York's transactional approach to resjudicata, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." (id. at 269 quoting O'Brien v City ofSyracuse, 54 NY2d 353, 357 [1981]). "Under this approach, claims arising out of the same factual grouping will be barred if: (l) the claims could have been raised in the initial forum; and (2) the initial forum had the power to award the full measure of the relief sought in the later litigation." (Parker v Corbisiero, 825 F Supp 49, 54 [SDNY 1993] internal citations omitted).
"Whether a claim that was not raised in a previous action could have been raised therein depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. The question of whether two actions arise from the same transaction or claim is addressed by determining if the underlying facts are related in time, space, origin or motivation, the extent to which they form a convenient trial unit and whether such treatment conforms to the parties' expectations or business understanding or usage. The claim or cause of action is comprised of the identity of facts surrounding the occurrence, and not the legal [*3]theory used to frame a complaint." (Medcalfv Thompson Hine, LLP, 84 F Supp 3d 313, 325 [SDNY 20151).
The doctrine of res judicata holds that, as to the parties in a litigation, and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action. (Gramatan at 485). The Court finds the current claims are based on the same transactions as in the earlier action, and are therefore barred even though they may be based upon different theories (see Dowlah v American Arbitration Association, 221 AD3d 426 [2023]; Landau, P.C. v LaRossa, Mitchell & Ross, 1 1 NY3d 8, 12 [2008]; Matter ofBenjamin v New York City Dept. of Educ., 119 AD3d 440, 442 [Pt Dept 2014], IV denied 24 NY3d 907 [2014]). The fact that plaintiff has pleaded different causes of action and included new parties is of no moment. Although the parties in both actions are not identical, defendant against whom judgement is sought, was a party in the earlier action (see Rojas v Romanoff 186 AD3d 103, 108, [1 st Dept 20201) and there is privity between the plaintiffs in the 2017 Complaint and the current one.
In Rojas v Romanoff 186 AD3d 103 (2020) the Court observed that "[c]onceptually, "res judicata" is an umbrella term encompassing both claim preclusion and issue preclusion, which are described as two separate aspects of an overarching doctrine (see Gramatan at 485; Cromwell v County ofSac, 94 US 351, 352-353 [1 876]; 73A NY Jur 2d, Judgments 428; Restatement [Second] of Judgments 24 [1982]). Claim preclusion, the primary aspect of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties (O'Brien v City ofSyracuse, 54 NY2d 353 [19811; Lodal, Inc. v Home Ins. Co., 309 AD2d 634, 634 [1st Dept 2003]); issue preclusion, the secondary aspect, historically called collateral estoppel, pertains to the bar on relitigating issues that were argued and decided in the first suit. (Buechel v Bain, 97 NY2d 295, 303 [2001], cert denied 535 US 1096 [2002])."
Also in Rojas, the Court continued,"[c]laim preclusion prevents relitigating between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions that either were raised or could have been raised in the prior proceeding [citations omitted]. As the Court of Appeals has stressed, this "identity" requirement is a "linchpin of res judicata," which applies "only when a claim between the parties has been previously 'brought to a final conclusion' " (City ofNew York v Welsbach Elec. Corp., 9 NY3d 124, 127 [2007] [emphasis omitted], quoting Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]; see also Blue Sky, LLC v Jerry's SelfStor., LLC, 145 AD3d 945 [2d Dept 2016]). Stated differently, the "doctrine of res judicata only bars additional actions between the same parties on the same claims based upon the same harm" (Employers' Fire Ins. Co. v Brookner, 47 AD3d 754, 756 [2d Dept 2008] [internal quotation marks omitted])."
Issue preclusion prohibits the re-litigation of issues argued and decided in a previous case, even if the second suit raises different causes of action (Buechel at 303; Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action. (Buechel at 303-304). There is a limit to the reach of issue preclusion, however. In accordance with due process, it can be asserted only against a party to the first lawsuit, or one in privity with a party (see Arizona v California, 460 US 605, 619 [1983]; People v Guerra, 65 NY2d 60, 63 [19851; Sales v State Farm Fire & Cas. Co., 902 F2d 933, 936 [1 Ith Cir 1990]). Here, the Court finds privity between the original plaintiffs and the current ones.
Issue preclusion differs from claim preclusion in two ways. First, issue preclusion does [*4]not bar entire causes of action. Instead, it prevents re-litigation of previously decided issues (Buechel at 303). Second, unlike claim preclusion, issue preclusion can be raised by one who was not a party or in privity in the first suit. Only the party against whom the doctrine is invoked must be bound by the prior proceeding. Thus, issue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) the issue was necessary to support a valid and final judgment on the merits (Conason v Megan Holding, LLC, 25 NY3d 1, 17 [2015]).
Defendants assert that, insofar as plaintiffs Frederick Vogel, Sr., Frederick M. Vogel, Jr., Michael Vogel and Scott Vogel comprise the entirety of the membership of Northern Hospitality Management? the plaintiffs are in privity with Northern Hospitality Management (NYSCEF Doc. No. 5 at 'I'll 3-14). The Court finds this to be so.
The plaintiffs contend that there is no privity as between the plaintiffs and Northern Hospitality Management as "Northern Hospitality Management, LLC is a distinct and separate entity from the individual plaintiff creditors" (NYSCEF Doc. No. 35 at pg. 7). In the context of claim/issue preclusion, "privity does not have a single well-defined meaning. Rather, privity is an amorphous concept not easy of application . . . and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and those who are co-parties to a prior action." (Buechel at 317 [2001] citing Juan C. v Cortines, 89 NY2d 659, 667 [1997]).
Defendants further argue that the rule against claim splitting likewise requires dismissal of the within complaint (NYSCEF Doc. No. 45 at '115-22). The claim splitting rule is best understood as a species of the genus res judicata (see Reilly at 27-31; Sannon-Stamm Assoc., Inc. v Keefe, Bruyette & Woods, Inc., 68 AD3d 678, 678 [Pt Dept 2009]), and it thus derives its conceptual force from "the principle that the public interest demands that a party not be heard a second time on a cause of action or an issue which he has already had an opportunity to litigate" (Kromberg v Kromberg, 56 AD2d 910, 912 [2d Dept 1977], affd. 44 NY2d 718 [19781; Caracaus v Conifer Cent. Sq. Assoc. 158 AD3d 63 [4th Dept 2017]).
Generally speaking, the "rule prohibiting claim splitting prohibits two actions on the same claim or parts thereof ." (Charles E. S McLeod, Inc. v Hamilton Moving & Stor., 89 AD2d 863, 864 [2d Dept 1982]). The rationale being, "[i]fa party will sue and recover for a portion, he shall be barred of the residue". (White v Adler, 289 NY 34, 42 [1942], quoting Bendernagle v Cocks, 19 Wend 207, 215 [Sup. Ct. 1838]). Viewed in that light, the claim splitting rule exists to prevent a plaintiff from harassing a defendant with multiple suits where one suit would have sufficed to afford the plaintiff full relief. (id. at 42-44; Roe v Smyth, 278 NY 364, 368-369 [1938]).
To invoke the doctrine, a defendant "must show that the challenged claim raised in the second action is based upon the same liability in the prior action, and that the claim was ascertainable when the prior action was commenced". (Dworkin Constr. Corp. (USA) v Marcus Group Inc., 80 Misc 3d 363 [Sup Ct, NY County 2023], quoting Melcher v Greenberg Traurig LLP, 135 AD3d at 552 [1 st Dept 2016]). Thus, "claims for damages spawned by the same liability on the same contract, and ascertainable at the time an action is commenced, must be demanded, if at all, in that action." (Solow v Avon Prods., Inc., 56 AD2d 785, 786 [1st Dept 1977], affd, 44 NY2d 711).
As a threshold matter, the Court finds that, insofar as plaintiffs Frederick Vogel, Sr., Frederick M. Vogel, Jr., Michael Vogel and Scott Vogel comprise the entirety of the [*5]membership of Northern Hospitality Management, the plaintiffs and Northern Hospitality Management are in privity with each other for purposes of this analysis. As members of Northern Hospitality Management, the plaintiffs — and the plaintiffs alone — had absolute control over the 2017 action, including the decision whether to name themselves as plaintiffs in their individual capacities. The Court further finds that the claims put forth in 2017 and as presently before the Court arose from the same transaction or series of transactions — the conception, formation and operation of A Life Made Simple. Indeed, the same evidence is needed to support both claims and the facts essential to this action were, undoubtedly, present in the first. The underlying facts are not merely "related" in time, space, origin and motivation, they are identical. Each and every aspect of the rights, responsibilities and contributions of the parties in this partnership was thoroughly litigated and tried to full and final determination, by a jury, on the merits. The plaintiffs' present claims, if allowed to proceed, would require re-litigation and re-argument of this central question decided by the Jury in 2021.
In the complaint presently before this Court the plaintiffs allege, "[a]s a result of [Defendant Moskos'] default, the plaintiffs have been damaged in the sum of $379,084.00". (NYSCEF Doc. No. 5 at '122)
At trial on the 2017 Complaint, Northern Hospitality Management elicited expert testimony that A Life Made Simple sustained losses in the amount of $379,000.00 during its existence and this testimony was referenced extensively by Northern Hospitality Management's counsel in his summation.
Had the jury elected to credit this testimony, a sound and substantial basis would have certainly existed to support a verdict in the amount of $379,000.00. Instead, the jury credited the testimony of defendant Moskos as to the terms of the partnership agreement. That the plaintiffs' theories of recovery differ as between the two actions is immaterial. The inquiry is whether the present claims could have been raised in the first action. In this regard, not only could the plaintiffs' claims have been addressed in the 2017 Complaint, they actually were — and they were rejected.
It is noteworthy that Fred Vogel's extensive testimony as to the terms of the partnership agreement made no mention of the issuance of "credit" to defendants by the plaintiffs in their individual capacities, this despite he being one of the alleged individual creditors.
The plaintiffs allege their extension of credit was coincidental to the startup and operation of A Life Made Simple, events which long predate the 2017 action, let alone the present one commenced in 2023. The dollar value ascribed to this credit was clearly known to or identified by the plaintiffs during prior proceedings. The plaintiffs took no steps to supplement their 2017 Complaint to include themselves as parties in their individual capacities or to include those causes of action asserted herein. See CPLR 3025.
Accordingly, the plaintiffs' assertions as to: (l) their inability to name themselves as plaintiffs in the first action; and (2) being deprived a full and fair opportunity to litigate the issue of monies owed in connection with A Life Made Simple, rings hollow.
As to the second prong of the analysis, neither party contends that this Court, as the initial forum, was without power to award the full measure of the relief sought in this subsequent action.
Turning, finally, to the issue of claim splitting, the Court finds that the plaintiffs seek to impermissibly redetermine the rights and responsibilities of the parties in connection with A Life Made Simple. At trial, the plaintiffs took the firm position that there existed no partnership [*6]agreement between Northern Hospitality Management and defendant Moskos. The jury's ultimate finding of a partnership gives rise to no entitlement on the part of the plaintiffs to now pursue theories of recovery premised upon one's existence. Had the plaintiffs wished to pursue such theories, they could and should have elected to plead and pursue them in the alternative in 2017. (See CPLR 3014 which specifically authorizes separate causes of action to be stated "regardless of consistency" O'Brien at 875).
By asking the Court to consider their new claims, the plaintiffs are, necessarily, asking this Court to vacate the jury's determination that a partnership agreement existed as between the plaintiffs and defendant Moskos, under which, defendant Moskos, as a matter of law is not indebted to the plaintiffs in any amount whatsoever (see NYSCEF Doc. No. 43, pg. 713).
If, theoretically, the plaintiffs' claims were permitted to proceed, the case would, naturally, center upon the oral partnership that the jury found — against the plaintiffs' contentions — to have existed. This finding, following the jury's deliberations after extensive testimony from these same individuals and after considering protracted recorded conversations on the very subject of the parties' rights and responsibilities, shall not be heard again by anther jury.
Based upon the forgoing analysis and the reasons set forth hereinabove and upon careful consideration of the record NYSEF Documents 1 — 30, 34 — 38, 43, 45, and 47, it is hereby
ORDERED that the within Complaint is dismissed by operation of the doctrines of res judicata and its progeny, including the prohibition against claim splitting, together with costs; and it is further
ORDERED that any relief not specifically addressed herein has nonetheless been considered and is expressly denied.
The above constitutes the Decision and Order of this Court.
The original of this Decision and Order has been filed by the Court. Counsel for moving defendants is directed to serve plaintiffs with notice of entry.
Dated: October 22, 2024
Lake George, New York
ENTER: